**STATE of Iowa, Appellee,**

v.

**Ronald Lee ROYER, Appellant.**

No. 00–0903.

Supreme Court of Iowa.

Sept. 6, 2001.

---

* Senior Judge assigned by order pursuant to Iowa Code section 602.9206 (2001).

Linda Del Gallo, State Appellate Defender, and Dennis D. Hendrickson, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Darrel L. Mullins, Assistant Attorney General, Barbara A. Edmondson, County Attorney, and Eric Goers, Assistant County Attorney, for appellee.

CARTER, Justice.

The defendant, Ronald Royer, pled guilty to the offense of manufacturing methamphetamine in violation of Iowa Code section 124.401(1)(b)(7) (1999), a class "B" felony. The charges against him were filed after numerous ingredients necessary for the manufacture of methamphetamine were discovered in his car and home. A Department of Public Safety criminologist estimated the potential yield of methamphetamine from the ingredients would have been well over 100 grams. That estimate was used as a factual basis for accepting defendant's guilty plea to the class "B" felony.

On appeal, defendant urges that the applicable statutes require the manufacture of five actual, not potential, grams of methamphetamine to support a conviction. He contends that his counsel at the guilty plea proceeding was ineffective for permitting him to plead guilty to a crime for which the admitted facts would not support a conviction. We conclude that under a proper interpretation of section 124.401(1)(b)(7) the record does not disclose a factual basis for a plea of guilty

based on a violation of that statute. Because of the considerable doubt that exists concerning whether such a factual basis can be shown, we conclude that effective counsel would not have allowed defendant to plead guilty under these circumstances. We vacate defendant's sentence and remand the case for a redetermination of factual basis in accordance with this opinion.

In arguing that he was not guilty of manufacturing more than five grams of methamphetamine, defendant relies on the distinction that we drew in *State v. Casady*, 597 N.W.2d 801, 807 (Iowa 1999). In that case, this court concluded that under the conspiracy alternative of section 124.401(1) a potential rather than an actual yield of five grams of methamphetamine was sufficient to establish guilt. We stated in this regard:

> The first alternative means of violating the statute is the actual manufacture of drugs, but the second alternative includes a conspiracy to manufacture it. *See* Iowa Code § 124.401(1). Contrary to Casady's argument, it is not necessary for the State to prove the second alternative by also proving the first. While the State must show an overt act toward the accomplishment of the conspiracy, Iowa Code § 706.1(3), it did not have to prove the completed act.

*Casady*, 597 N.W.2d at 807. Defendant urges that, when the State bases its charge on the manufacturing of a controlled substance rather than a conspiracy to manufacture a controlled substance, it must show that a manufacturing process was completed that actually yielded five or more grams of the prohibited substance. The State responds that the statutory definition of the term "manufacture" as contained in Iowa Code section 124.101(16)

includes the preparation of the controlled substance and the amount of finished product is not controlling.

The statutory definition of "manufacture" is as follows:

> *"Manufacture"* means the production, preparation, propagation, compounding, conversion or processing of a controlled substance, either directly or by extraction from substances of natural origin, or independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance by an individual for the individual's own use, or the preparation, compounding, packaging, or labeling of a controlled substance:
>
> *a.* By a practitioner as an incident to administering or dispensing of a controlled substance in the course of the practitioner's professional practice, or
>
> *b.* By a practitioner, or by an authorized agent under the practitioner's supervision, for the purpose of, or as an incident to, research, teaching, or chemical analysis and not for sale.

Iowa Code § 124.101(16). As the State urges, this definition envisions the process of preparing or producing a controlled substance by various means. We are unable to conclude, however, that the language of this statutory definition assists us in determining precisely what the manufacturing process must yield in order to constitute a violation of section 124.401(1)(b)(7). We must rely on the relevant language of the latter statute in order to determine the answer to that question. That statute provides:

1.   Except as authorized by this chapter, it is unlawful for any person to manufacture, deliver, or possess with the intent to manufacture or deliver, a controlled substance, a counterfeit substance, or a simulated controlled substance, or to act with, enter into a common scheme or design with, or conspire with one or more other persons to manufacture, deliver, or possess with the intent to manufacture or deliver a controlled substance, a counterfeit substance, or a simulated controlled substance.

. . . .

b.   Violation of this subsection with respect to the following controlled substances, counterfeit substances, or simulated controlled substances is a class "B" felony, and in addition to the provisions of section 902.9, subsection 1 [providing a twenty-five year prison sentence], shall be punished by a fine of not less than five thousand dollars nor more than one hundred thousand dollars: . . .

. . . .

(7) More than five grams but not more than five kilograms of methamphetamine, its salts, isomers, or salts of isomers, or analogs of methamphetamine, or any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine, its salts, isomers, or salts of isomers, or analogs of methamphetamine.

Iowa Code § 124.401(1)(b)(7).

■   Statutory words are presumed to be used in their ordinary and usual sense and with the meaning commonly attributable to them. *State v. Rohm*, 609 N.W.2d 504, 510 (Iowa 2000); *State v. Walker*, 574 N.W.2d 280, 289 (Iowa 1998). The plain

language of the statute under consideration indicates that, in order to be in violation of the subsection (7) alternative for violating section 124.401(1)(b), one has to produce, by the manufacturing processes recognized in section 124.101(16), more than five grams of either:

(1) Methamphetamine, its salts, isomers, or salts of isomers, or analogs of methamphetamine, or

(2) Any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine, its salts, isomers, or salts of isomers, or analogs of methamphetamine.

■   In commenting on the second alternative listed above, the court of appeals has observed:

The statute specifically states the amount must be five grams or more of "methamphetamine . . . or any compound, mixture, or preparation which contains any quantity or detectable amount of methamphetamine. . . ." It does not specify any particular stage of the manufacturing or post-manufacturing process, nor does it indicate an expected yield must be estimated or a pure form must be extracted in order to weigh the narcotic. . . .

We find the statute is plain on its face and does include any compound or mixture which contains any quantity or detectable amount of methamphetamine.

*State v. Rivera*, 614 N.W.2d 581, 584 (Iowa Ct.App.2000) (citation of regulation omitted).[1]   We agree with that conclusion. Moreover, we interpret the statute as authorizing the State to aggregate any manu-

---

**1.**   We considered a very similar statutory interpretation issue under section 124.401(b)(2)(d) in *State v. Maghee*, 573

N.W.2d 1, 11–12 (Iowa 1997), but found it unnecessary to decide the question.

factured substance falling under either or both of these alternatives in seeking to establish a prohibited manufacture of methamphetamine.

In seeking to show a factual basis for defendant's plea, the State relies on laboratory reports from the Iowa Department of Public Safety Criminology Laboratory. These reports show the substances in defendant's possession included:

- an alkaline solution containing ephedrine or pseudoephedrine (no weight shown),
- 2.53 grams of a powdered compound containing methamphetamine,
- unspecified methamphetamine residue (lab exhibits B and D),
- two liquid compounds containing some methamphetamine (no weight shown),
- 600 60 mg tablets of pseudoephedrine hydrochloride, a known precursor of methamphetamine,
- a propane tank,
- forty lithium batteries, and
- three cans of engine starting fluid.

The State sought to show a factual basis for defendant's guilty plea by relying on the potential yield of methamphetamine that might be obtained from the foregoing materials, assuming that anhydrous ammonia was obtained for use in the manufacturing process. According to the State, if that were done the potential yield would have been 276 grams of methamphetamine.

■ The State's attempt to establish a factual basis for defendant's plea based on potential yield does not comport with the requirements of the statute under which he was charged. It is necessary to show that the manufacturing process in fact

yielded five grams or more of methamphetamine, its salts, isomers or salts of isomers, or analogs of methamphetamine, or as the court of appeals declared in *Rivera,* more than five grams of "any compound or mixture which contains any quantity or detectable amount of methamphetamine." *Rivera,* 614 N.W.2d at 584.

On the record presented, there is clearly no factual basis for the plea under the first alternative. With respect to the second alternative, the record does not disclose an adequate factual basis for the plea, but we cannot state with certainty that such basis does not exist. The laboratory report does not reveal the weight of the liquid compounds containing methamphetamine. Nor was the residue identified in lab exhibits "B" and "D" quantified. As a result, we have no way of knowing whether, if the weight of those compounds were added to the powder compound weighing 2.53 grams, the total weight of manufactured substance containing methamphetamine would exceed five grams.

■ When a defendant's counsel does not challenge the entry of a guilty plea to an offense for which no factual basis is shown and a strong possibility exists that there was no factual basis, we have consistently held that this court may review the resulting challenge to the plea notwithstanding a failure to file a motion in arrest of judgment. *State v. Schminkey,* 597 N.W.2d 785, 788 (Iowa 1999); *State v. Miller,* 590 N.W.2d 724, 726 (Iowa 1999); *State v. Allison,* 576 N.W.2d 371, 374 (Iowa 1998); *State v. Hack,* 545 N.W.2d 262, 263 (Iowa 1996); *State v. Galbreath,* 525 N.W.2d 424, 427 (Iowa 1994).

■ When a guilty plea has no factual basis in the record, two possible remedies exist. When the record establishes that

the defendant was charged with the wrong crime, we have vacated a judgment of conviction and sentence and remanded for dismissal of the charge. *See Hack*, 545 N.W.2d at 263; *State v. Schoelerman*, 315 N.W.2d 67, 75 (Iowa 1982). If, however, it is possible that a factual basis could be shown, it is more appropriate to vacate the sentence and remand for further proceedings in which the State might have an opportunity to establish a factual basis. *Schminkey*, 597 N.W.2d at 792. We think this case falls within the latter category.

In his brief filed in this court, defendant suggests that, if no factual basis is shown, we reclassify his conviction as a class "C" felony and provide for a ten-year sentence. That is the classification and penalty provided in section 124.401(1)(c)(6) for manufacture of five grams or less of methamphetamine. Because there is a factual basis for a violation of that statute, we agree that this would be an expeditious disposition of the matter if on remand the State is unable to show a factual basis for the charge to which defendant entered a plea.

We vacate defendant's sentence and remand the case to the district court in order to allow the State to establish a factual basis for the original charge under the interpretation that we have given the statute. If the State is successful, defendant's conviction and sentence shall be reinstated. If the State fails to establish a factual basis, the defendant shall be resentenced as if convicted under section 124.401(1)(c)(6).

**SENTENCE VACATED AND CASE REMANDED.**

SNELL, J.,* participates in lieu of STREIT, J., who takes no part.

---

\* Senior Judge assigned by order pursuant to Iowa Code section 602 .9206 (2001).